IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:13-CR-161 |
| v. | ) | |
| | ) | (REEVES / GUYTON) |
| FERNANDO AMAYO GONZALEZ, | ) | |
| GONZALO GARCIA GINES, | ) | |
| GEYSER DELEON, and | ) | |
| TAWANA CORTEZ | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This case is before the Court on the following nondispositive pretrial

motions:

> (1) Motion for "Pinpoint" Discovery [Doc. 145], filed by Defendant
> Fernando Amayo Gonzalez on January 14, 2014;
>
> (2) Motion by Defendant for "Pinpoint" Discovery [Doc. 149], filed
> by Defendant Alfredo Casteneda[1] on January 17, 2014;
>
> (3) Motion to Adopt Motions of Codefendants [Doc. 151], filed by
> Defendant Tawana Cortez on January 17, 2014;
>
> (4) Motion for Production by United States of English-Language
> Translations of Conversations [Doc. 152], filed by Defendant
> Fernando Amayo Gonzalez on January 17, 2014;

---

[1]Although Defendant Casteneda has entered into a plea agreement [Doc. 260] and, thus, is
presumably no longer pursuing this motion, the Court will rule on the motion because
Codefendant Cortez has asked to join [Doc. 151] in it.

1

(5) Motion to Adopt Motion by Fernando Amayo-Gonzalez for Production by United States of English Language Translations of Conversations [Doc. 166], filed by Defendant Geyser Deleon on January 21, 2014; and

(6) Motion by Defendant for "Pinpoint" Discovery and for Spanish-to-English Translation [Doc. 245], filed by Defendant Gonzalo Garcia Gines on April 4, 2014.

The Government filed responses [Docs. 195 and 196] to these motions on January 27 and 28, 2014.

On February 7, 2014, Defendant Amayo Gonzalez filed a memorandum [Doc. 202] with three attachments in reply. The Government filed a supplemental response [Doc. 216] on February 26, 2014. Upon review of these discovery issues, the Court declines to order the Government to produce pinpoint discovery or the translation and transcription of all intercepted Spanish conversations and text messages in this case.

## I. MOTIONS TO ADOPT

Defendants Cortez [Doc. 151], Deleon [Doc. 166], and Gines [Doc. 245] seek to join in the motions [Docs. 145, 149, and 152] of their Codefendants. All three Defendants argue that permitting them to adopt previously filed motions will avoid unnecessary duplication of pleadings. Defendant Cortez's request [**Doc. 151**] to join in the two motions for pinpoint discovery and the accompanying legal memoranda is **GRANTED**. Defendant Deleon's motion [**Doc. 166**] to adopt Defendant Amayo Gonzalez's Motion for Production of English Language Translations of Conversations is **GRANTED**. Defendant Gines' motion [**Doc. 245**] is **GRANTED in part** in that he is permitted to join in Defendant Amayo Gonzalez's Motion for "Pinpoint" Discovery. The Court will rule on Defendant Gines' request [Doc. 245] for English translations of all evidence in Spanish

2

below.

## II. PINPOINT DISCOVERY

Defendants Amayo Gonzalez,[2] Cortez, and Gines ask [Doc. 145 & 149] the Court to

order the Government to identify "with particularity and specificity" those documents or items in the

voluminous discovery that are relevant to each Defendant's alleged participation in the charges

asserted in the Indictment. The motion states that discovery comprises 260 gigabytes contained on

two hard drives with more discovery forthcoming. The discovery includes wire and electronic

interceptions, wiretap interception line sheets, video and audio recordings of controlled drug

purchases, pen register data, realtime geo-location data, and surveillance documents. Some of the

discovery is in Spanish, which Defendants contend each defense counsel will have to have translated,

requiring considerable time and expense. Defense counsel observes that access to the hard drives

is limited and the size of the hard drives may force counsel to upgrade their computer systems. The

Defendants contend that unless the Government identifies which discovery is relevant to each

Defendant, defense counsel will not have sufficient time to review the discovery, to determine

whether expert witnesses are necessary, and to have potential experts prepare for trial. The

Defendants contend that the failure to grant the motion will violate their Fifth Amendment right to

due process of law and nullify their rights under the Speedy Trial Act of 1974. The Defendants also

---

[2]The Court observes that Defendant Amayo Gonzalez's Motion for "Pinpoint" Discovery [Doc. 145] was filed by his court-appointed counsel Attorney Gerald L. Gulley, Jr. Defendant was subsequently permitted [Doc. 232] to substitute retained counsel Attorney Casey Caldwell. Mr. Caldwell has not stated whether the Defendant Amayo Gonzalez is still pursuing the motions filed by prior counsel. Nevertheless, the Court will rule on Defendant Amayo Gonzalez's motion because his Codefendants have joined in it.

3

argue that the granting of the motion would not prejudice the Government and would serve to promote judicial economy, the orderly administration of justice, and the efficiency of appointed counsel, thereby reducing the cost of the case to the federal government.

The Government objects [Doc. 195] to an order requiring it to provide pinpoint discovery. First, it argues that the Court of Appeals for the Sixth Circuit has rejected an argument that the Government direct a defendant to exculpatory evidence within the total discovery provided. United States v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010). Even when discovery is voluminous, the Government has no duty to isolate the particular items or documents that are relevant to each count of an indictment. See United States v. Richards, 659 F.3d 527, 543-44 (6th Cir. 2011), cert. denied, 132 S. Ct. 2726 (2012). The Government argues that if Defendants have insufficient time to review and use discovery, they should request a trial continuance.

Second, the Government contends that it has provided specific, relevant discovery to the individual Defendants in addition to providing the entire universe of discovery. It states that it has provided the individual telephone calls and text messages of the Defendants who were intercepted on the tapped telephones. It also contends that all Spanish interceptions produced in discovery were accompanied by English summaries or, in some instances, verbatim English translations. The Government argues that it has gone above and beyond its discovery obligations in this case and that it will continue to work with defense counsel in good faith to enable them to access discovery information efficiently. Accordingly, it argues that the motions for pinpoint discovery should either be denied as a matter of law or denied as moot.

Rule 16 of the Federal Rules of Criminal Procedure governs the parties' responsibilities with regard to discovery in this case. Rule 16 provides what should be disclosed but

4

does not speak to the form that the disclosure should take. See Warshak, 631 F.3d at 296 (observing

that Fed. R. Crim. P. 16 does not require that discovery be indexed or organized in a specific way).

In the instant case, the Court finds that the amount of discovery is voluminous, consisting of

approximately 260 gigabytes of information. The Court finds that the Government has provided the

discovery on hard drives which are available for the Defendants to check out and copy or review.

The Government also contends that it has provided each Defendant with a subset of the discovery

that is specific and relevant to that Defendant, such as the intercepted telephone conversations or text

messages of that Defendant.

The Defendants asks the Court to order the Government to specify which portions of

the discovery apply to each Defendant. They maintain that it is within the Court's discretion and

inherent powers to regulate discovery. See Richards, 659 F.3d at 543; Rhodes v. McDaniel, 945

F.2d 117 119 (6th Cir. 1991) (determining that "[t]he district court has broad discretion in regulating

discovery"). They contend that such particularization will aid the Defendants, who have differing

roles in the conspiracy and will promote the speed and cost-effectiveness of the resolution of this

case. After carefully considering the arguments of the parties, the Court finds that the requested

designation is not required by the law or necessitated by the facts of this case.

First, the Court finds that neither Rule 16 or the Due Process clause of the Fifth

Amendment require the Government to designate that discovery that relates to a particular defendant

or count of an indictment. Warshak, 631 F.3d at 296; Richards, 659 F.3d at 543-44. Instead, Rule

16 requires the disclosure of specific categories of data:

> Upon a defendant's request, the government must permit the
> defendant to inspect and to copy or photograph books, papers,
> documents, data, photographs, tangible objects, buildings or places,

5

or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  As pointed out by the Government, the Court of Appeals for the Sixth Circuit has expressly held that "[t]he discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988). Accordingly, Rule 16 does not impose a general obligation on the Government to specifically designate the evidence that applies to each Defendant in this case.

Moreover, the circumstances of this case do not require the Court to exercise its discretion in regulating discovery to require the requested designation of pinpoint discovery. Initially, the Court questions whether the Government can effectively isolate certain discovery that applies only to a specific Defendant.  The Defendants in this case are charged [Doc. 3, Count 1] with conspiring to distribute and possess with intent to distribute cocaine and crack cocaine over approximately sixteen months.  It is well settled that "the overt act of one partner in crime is attributable to all," as long as the overt act was  performed in furtherance of the conspiracy. Pinkerton v. U.S., 328 U.S. 640, 645 (1946).  Accordingly, the Court finds that knowing what parts of the discovery the Government contends are overt acts committed by a particular Defendant will not alleviate the Defendants' need to review those overt acts allegedly committed by their Codefendants.  In other words, even if the Defendants received pinpoint discovery, they would still have to review the other discovery to prepare for trial.  For this reason, the Court questions whether

6

the provision of pinpoint discovery would actually reduce the legal fees of appointed counsel, as suggested by the Defendants.[3]

Furthermore, in the instant case the Government has taken steps to make the voluminous discovery more manageable for the Defendants. The Government states that in addition to making all discovery available to each Defendant, it has designated some discovery that is specific and relevant to a particular Defendant in order to encourage timely and efficient resolution of the case. Thus, the Court finds that the Defendants have received some "pinpoint" discovery already. Finally, the Court observes that while it has had this motion under advisement, the trial of this case has been continued [Doc. 199] from February 11, 2014, to August 19, 2014, at the Defendants' request. The undersigned granted this continuance in order to allow Defendants to complete their review of discovery and to file pretrial motions. In this respect, the Court observes that in the Speedy Trial Act, Congress has made provision for those cases in which the number of defendants, the nature of the case, or the need for additional time to permit defense counsel to prepare for trial effectively requires more than the normal seventy-days to bring the defendant to trial. See 18 U.S.C. § 3161(h)(7). The Court finds that the provision of some pinpoint discovery along with the ample additional time granted in continuing this case serve to ameliorate the sheer volume of the discovery for defense counsel.

Accordingly, the Court finds that the provision of pinpoint discovery is not required by law and is not compelled by the circumstances in this case. The Defendants' joint motions for pinpoint discovery [**Docs. 145 and 149**] are **DENIED**.

---

[3]The Court also observes that two of the three Defendants pursuing this motion are represented by retained counsel.

## III. ENGLISH TRANSLATIONS

Defendants Amayo Gonzalez [Doc. 152],[4] Deleon, and Gines [Doc. 245] move the Court to order the Government to provide English translations of all Spanish telephone conversations and text messages that were provided in discovery.[5] While the Defendants acknowledge that they could have the conversations translated themselves, they observe that any two translations may vary in the words used and the meanings conveyed. Thus, they argue that it is necessary for them to receive the Government's translations of the Spanish conversations involving them so that they will know what the Government will contend that they said and how they said it. They contend that the failure to receive the Government's English translations will violate their rights to due process and will impair their ability to defend themselves.

The Government responds [Docs. 196 & 216] that granting the Defendants' motions would require it to translate all the telephone conversations intercepted in the course of its year-long, multi-defendant investigation. The Government relates that it intercepted some 9,000 Spanish conversations in this case, approximately 6,000 of which are "pertinent" to the twenty-eight Defendants, who have been arrested in this case. It states that these calls comprise some 600 hours of intercepted Spanish conversations. The Government has made all of the intercepted calls available to the Defendants and has provided English summaries of each interception and verbatim

---

[4]See footnote 2 above.

[5]Defendant Gines argues simply that the Court should require the Government to provide "Spanish-to-English translation of all Spanish language evidence of every kind intended to be used by the Government against him so that Mr. Gines' English-speaking-only attorney may understand in advance the Government's case against his client." [Doc. 245, p.2] Defendant Gines does not state what discovery besides intercepted telephone conversations and text messages are in Spanish. Accordingly, the Court limits its analysis to the intercepted telephone conversations and texts addressed in Defendant Amayo Gonzalez's motion.

8

transcriptions of particularly relevant conversations. It has also provided collections of the intercepted telephone conversations involving specific Defendants, whose telephones were not tapped, to their respective counsel. Finally, the Government responded in late February that it was in the process of "breaking out" the non-duplicative calls of Defendants, whose telephones were tapped, from the intercepted calls on their Codefendants' telephones and would be providing these collections of intercepted calls to counsel.

The Government opposes producing translations of all of the intercepted calls and text messages as impractical and not required by Rule 16. It submits that such an endeavor, which involves creating discovery, rather than simply disclosing it, would take two translators about one-year to complete. Instead, the Government states that it will provide translations of all Spanish conversations or text messages that it intends to use in its case-in-chief at trial "well in advance of trial"[6] but that it would be unduly time consuming and cost prohibitive to translate all the Spanish conversations at this point, when many of the Defendants will choose not to go to trial.[7] Instead, the Government argues that defense counsel should exercise due diligence by using the English summaries and translations provided and should avail themselves of the assistance of their Spanish-

---

[6]The Court notes that the provision of these transcripts should occur sufficiently in advance of trial for the Court to conduct a Robinson hearing, if one is requested. With regard to the admissibility of transcripts, this Court requires that if transcripts of recorded conversations will be prepared for use at trial, counsel must meet, confer, and devise a plan for authentication of those transcripts to be suggested to the undersigned at any status conference called by the Court and in any event not later than the time of the pretrial conference. Every effort shall be made to stipulate the authenticity of any such transcripts without the necessity of court intervention. Counsel are directed to familiarized themselves with United States v. Robinson, 707 F.2d 872 (6th Cir. 1983), which describes the procedures for determining the admissibility of tape recordings and transcriptions thereof.

[7]At the time of this Memorandum and Order, fourteen of the twenty-eight Defendants have entered into plea agreements.

9

speaking clients in order to select those Spanish conversations they may want to have their own interpreters translate. Alternatively, the Government states that the Defendant could ask it to translate the specific conversations that defense counsel believes to be particularly important or to have been inaccurately or inadequately summarized. Finally, the Government contends that if the Court decides to grant the Defendants' motion, then some of the cost of transcription should be shifted to the Defendants.

In reply, the Defendants [Doc. 202] argue that they should have access to English translations of the conversations intercepted in this case in order to determine whether they will proceed to trial. "A defendant in this case should not have to make a decision on whether to proceed to trial without knowing <u>what</u> conversations <u>the government believes</u> show the defendant's culpability, and <u>why</u> (that is, what does the defendant say in English translation that shows culpability for the charged offenses)." [Doc. 202, p. 3 (emphasis in original)] The Defendants contend that otherwise, they cannot make a knowing and intelligent decision to plead guilty or to maintain a plea of not guilty. Thus, the Defendants argue that due process requires the Court to order the Government to provide English translations of all intercepted Spanish conversations. Alternatively, they contend that the Government should designate and provide English translations of those Spanish conversations that it will use at trial against each of them at a meaningful time before the deadline for concluding plea negotiations.[8]

"It is well settled that a district court has considerable discretion under Rule 16" to

---

[8]The Court finds that this second alternative is actually a version of the Defendant's request for pinpoint discovery with respect to the intercepted calls and texts. As discussed above, the Court finds that the Government is not required to designate the evidence that it will use at trial and that it has already designated for the Defendants those calls and text messages in which he took part.

10

regulate discovery.  United States v. Maples, 60 F.3d 244, 246 (6th Cir. 1995).  However, the Court

must exercise that discretion fairly and prudently, guided by our appellate court's holding that Rule

16 discovery is limited to that expressly provided in the rule.[9]  Presser, 844 F.2d at 1285.  Here, the

Government has already made available in discovery *all* of the telephone conversations and text

messages intercepted in the investigation of this case.  Moreover, the Government has given defense

counsel English summaries of *every* intercepted conversation.  The question before the Court is

whether the Government is required by Rule 16 or the Due Process clause of the Fifth Amendment

to provide verbatim English translations of every intercepted call or text prior to the July 18, 2014

deadline for concluding plea negotiations.  The Court finds that the English summaries suffice and

that the Government is not required to produce verbatim English translations of all the intercepted

calls and texts in this case or to designate and translate in advance of the July 18 plea deadline those

conversations upon which it will rely at trial.

First, as discussed above, Rule 16 does not require the Government to provide

discovery in any particular form.  See Warshak, 631 F.3d at 296.  Likewise, the Government's

obligation to produce exculpatory evidence in its possession under Brady v. Maryland, 373 U.S. 83

(1963), does not require that it point out exculpatory evidence within the discovery produced.

Warshak, 631 F.3d at 297-98 (observing that the government may not act in bad faith, obscuring

---

[9]Rule 2 of the Federal Rules of Criminal Procedure provides that the rules of criminal
procedure "are to be interpreted to provide for the just determination of every criminal
proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate
unjustifiable expense and delay."  The Court of Appeals for the Eleventh Circuit has observed
that courts exercising discretion under Rule 16 should do so with "a limitation of
reasonableness."  United States v. Freeman, 688 F.2d 1364, 1366-67 (11th Cir. 1982) (holding
that the district court abused its discretion in ordering the government to copy documents at its
own expense for defendants, who were not indigent and who had access to the documents).

exculpatory evidence by padding discovery with irrelevant information or hiding exculpatory evidence within a large open discovery file). Applying these principles, the Court of Appeals for the Seventh Circuit has held that the government did not have to provide transcripts of all intercepted conversations. United States v. Parks, 100 F.3d 1300, 1305, 1307-08 (7th Cir. 1996).

In Parks, the prosecution gave the defendants copies of sixty-five hours of recorded conversations, which were in English but were hard to understand due to the slang and expressions used by the speakers, but provided transcripts of only the four hours it intended to use at trial. Id. at 1302. The district court ruled the government could not use any of the intercepted conversations at trial, unless it provided transcripts of all sixty-five hours to the defendants. Id. In holding the district court abused its discretion, the appellate court ruled that the law does not place the burden of translating irrelevant conversations on the government: "There is no requirement under Brady that the Government transcribe the entire sixty-five hours of the intercept, much of which contains irrelevant information." Id. at 1305, 1308; see also United States v. Santos-Cruz, No. CRIM 99-105, 2000 WL 326191, at *3 (E.D. Pa Mar. 15, 2000) (holding that "there is no requirement under federal law for the government to translate and transcribe all the tape recordings in this case"). The court observed that the defendants possessed the evidence in the same form as the government and that the information sought by the defendants (transcripts of the untranscribed portions of the recordings) were available to defense counsel "through the exercise of reasonable diligence." Parks, 100 F.3d at 1305, 1307. Moreover, the court observed "[t]here is no logical or practical reason to hold the Government's evidence hostage until the Government performs an act not required by law, nor is there any reason to require the Government to conduct defendants' investigation for them." Id. at 1308.

12

Similarly, the Ninth Circuit has held that the defendants' due process rights were not violated by the government's failure to provide English translations of all intercepted Spanish conversations in a cocaine trafficking case. United States v. Zavala, 839 F.3d 523, 527-28 (9th Cir. 1988). In Zavala, the defendants argued that their rights to due process and equal protection of law as well as their ability to prepare a defense were harmed because the government did not translate all 11,000 intercepted Spanish conversations. Id. at 527. Instead, the government provided translations of 1800 conversations that were "drug-related" and provided audio recordings of all of the intercepted calls. Id. The Ninth Circuit held that the government's refusal to transcribe conversations not relevant to drug trafficking was "reasonable" and did not violate the defendants' rights. Id. at 528 (observing that the district court offered defense counsel an interpreter to help identify important conversations and neutral transcription services for the conversations counsel then designated).

The Defendants argue that in both Parks and Zavala, the government provided translations and/or transcripts of the conversations it intended to produce at trial. Here, the Government also intends to produce English transcripts of all conversations and texts it intends to use at trial. The Defendants urge the Court to require translation of *all* the intercepted Spanish conversations, which they argue they need in order to determine whether to enter into a plea agreement, and to require the Government to provide any translations prior to the July 18 plea deadline. In support of their requests, they point two cases in which the district court exercised its discretion over discovery to require the government to produce English transcripts of foreign-language conversations. See United States v. Santiago, No. 12–cr–00566, 2013 WL 1688865 (E.D. Pa Apr. 18, 2013); United States v. Sherifi, No. 7:12-CR-20-BR, 2012 WL 2237074 (E.D.N.C. June

13

15, 2012) (Gates, M.J.).

In Santiago, the government designated 1329 intercepted Spanish conversations as relevant to drug trafficking. 2013 WL 1688865, at *2. In discovery, the government provided defendants with audio recordings of all 1329 conversations, electronic copies of English-language summaries of all 1329 conversations, and verbatim English translations of approximately 200 conversations it planned to use at trial. Id. The district judge ordered the government to translate and transcribe all 1329 relevant conversations, reasoning that the court-appointed defense counsel, only one of whom spoke Spanish, "need the English-language transcripts to enable them to effectively and efficiently represent their respective clients[.]" Id. at *11-12.

> Without English-language translations of the pertinent communications intercepted by the government during its investigation, defense counsel's ability to (1) assess the potential evidence against their respective clients, (2) to evaluate whether, and which, pretrial motions should be filed, and (3) to meaningfully prepare for trial or to advise their respective clients concerning possible non-trial resolution of the charges will be significantly reduced. The need for English-language transcripts of all pertinent calls in this case is heightened because these defendants are charged together as co-conspirators. Accordingly, intercepted conversations will be relevant to each defendant whether or not he was a party to that particular intercepted communication.

Id. at *11. The court also observed that requiring the government to translate all drug-related conversations prior to trial would prevent future trial continuances to permit transcription. Id. Finally, the court found that the creation of the transcripts would not place an undue burden on the government, which was in a better administrative position to undertake the mass transcription. Id. at 12. The court "infer[red] that the government will be able obtain English-language transcripts of the 1,329 pertinent intercepted calls at a lower cost than one, or all, defense counsel could command,

14

on relatively short notice, from a private linguistic service provider." The court noted that it would permit the government to seek partial payment from defendants for the transcriptions of conversations that it did not use at trial or in sentencing. Id.

In Sherifi, the government voluntarily agreed to produce translations and transcriptions of eight hours of intercepted conversations in Albanian that it intended to introduce at trial but objected to transcribing approximately 21.7 hours of Albanian conversations that it did not intend to use and some of which it contended were irrelevant to the case. 2012 WL 2237074, at *3. The magistrate judge ordered the government to produce English-language transcripts of all pre-arrest intercepted conversations in Albanian, holding that the defendants, not the government, were in the best position to determine the relevance of the intercepted conversations. Id. Moreover, the court concluded that because the defendants were charged in a conspiracy, all defendants needed to review transcripts of all of the recordings. Id. The court observed that all defense counsel and one of the defendants did not speak Albanian and that having a transcript would make analysis of the conversations easier for counsel. Id. at 4. Finally, the court held that the government could seek partial payment from the defendants through the CJA fund. Id. Although the defendants might ultimately have to share the cost of producing the translations, the court required the government to translate all of the intercepted conversations because the government was better equipped administratively to produce the translations and had readily available funding, unlike defense counsel who would have to seek approval for CJA funding. Id.

Defendants Amayo Gonzales, Deleon, and Gines argue that the concerns present in Santiago and Sherifi also apply in the instant case. Because they are charged in a conspiracy, they also need access to English translations of all of the intercepted conversations, so that counsel can

15

advise the Defendants about potential plea agreements and prepare a defense. They also contend

preparation of one set of transcripts by the Government would be more efficient and cost-effective

than having each Defendant seek to prepare a separate translation.

After carefully weighing the arguments of the parties and examining the cases, the

Court finds that ordering the translation and transcription of all 9,000 Spanish conversations is not

warranted in this case. First, the Court observes that unlike in Santiago, it is not clear that all 9,000

Spanish conversations are relevant to the alleged drug-trafficking conspiracy.[10] Although the court

in Sherifi held that the defendants were in the best position to determine the relevance of the

intercepted conversations, the undersigned observes that there is no indication in Sherifi that those

defendants had access to English summaries of the intercepted conversations, as do the Defendants

in this case. The Court finds that counsel for the Defendants are in the best position to read through

the summaries and to determine which calls should be translated. Moreover, these English

summaries will give defense counsel an overview of the alleged conspiracy.[11]

Additionally, the Court does not find that the same concerns about cost and efficiency

that motivated the rulings in Santiago and Sherifi necessarily exist in this case. First, only three of

twenty-eight Defendants have requested translation of all of the Spanish interceptions. All three of

---

[10]The Government states that 6,000 of the intercepted calls and texts are "pertinent" to the twenty-eight Defendants who have been arrested in this case. Thus, it is unclear whether all 6,000 conversations relate to the alleged conspiracy or, instead, simply involve one of the Defendants in the conversation. In its supplemental response [Doc. 216, p.2], the Government states that "[a]ll of the interceptions over [a] defendant's own telephones are specifically relevant to him (as opposed to general relevance to the whole conspiracy)."

[11]Interestingly, Defendant Amayo Gonzalez states on the one hand [Doc. 145], that it is a hardship for counsel to have to wade through two hard drives of discovery and, on the other hand [Doc. 152], he asks the Government to create 9,000 transcripts for him to review.

16

these Defendants speak Spanish. Of these three, two are represented by retained counsel.[12]

Accordingly, CJA funds would be requested for only those translations needed by Defendant Deleon.

The Court finds that the best use of the limited CJA funding is for counsel for Defendant Deleon to

use the English summaries and, with input from his Spanish-speaking client, select those Spanish

conversations that he deems necessary to be translated in order to prepare his defense.

The Court declines to exercise its discretion over discovery to order the Government

to translate all of the intercepted calls and texts in Spanish, particularly when the Government has

already provided English summaries for all the Spanish interceptions and will be providing verbatim

translations of those conversations or texts that it intends to use at trial. The Court is cognizant of

the fact that the presence of English summaries did not carry the day in the Santiago case. However,

the Court finds that the exercise of discretion to order discovery to be produced in a particular format

turns on the particular facts and circumstances of each case. In this case, the Court finds that the

equities weigh in favor of the individual Defendants selecting and translating those conversations

they deem necessary for their defense. Accordingly, the Defendants' Motion for Production by

United States of English-Language Translations of Conversations [**Doc. 152**] is **DENIED**.

Defendant Gines' Motion by Defendant for "Pinpoint" Discovery and for Spanish-to-English

Translation [**Doc. 245**] is **DENIED in part** to the extent that it requests the Court to order the

Government to provide English translations of all evidence in Spanish.

---

[12]In all likelihood, requiring Defendants with retained counsel to reimburse the
Government for one-third of the cost of translating and transcribing that portion of the 9,000
conversations that the Government does not use at trial or sentencing would be a hardship on
Defendants Amayo Gonzalez and Gines.

## IV. CONCLUSION

After consideration of the parties' motions, responses, legal memoranda, and the relevant case law, it is **ORDERED**:

(1) Defendant Cortez's and Defendant Deleon's motions [**Docs. 151 and 166**] to adopt their codefendants' motions are **GRANTED**. Defendant Gines' motion [**Doc. 245**] is **GRANTED in part** in that he is permitted to join in Defendant Amayo Gonzalez's Motion for "Pinpoint" Discovery;

(2) Defendants Amayo Gonzalez, Cortez, and Gines' joint motions for pinpoint discovery [**Docs. 145 and 149**] are **DENIED**;

(3) Defendants' Motion for Production by United States of English-Language Translations of Conversations [**Doc. 152**] is **DENIED**. Defendant Gines' Motion by Defendant for "Pinpoint" Discovery and for Spanish-to-English Translation [**Doc. 245**] is **DENIED in part** to the extent that it requests the Court to order the Government to provide English translations of all evidence in Spanish.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge

18